**FILED**

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

APR 2 – 2008

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. __2:07CR322-MHT__ |
| | ) | [18 U.S.C. § 371 |
| | ) | 18 U.S.C. § 1033(b)(1)(A) |
| | ) | 18 U.S.C. § 1341 |
| | ) | 18 U.S.C. § 1033(a) |
| | ) | 18 U.S.C. § 2] |
| | ) | |
| | ) | **SUPERSEDING INDICTMENT** |
| JOHN W. GOFF | ) | |

**THE GRAND JURY CHARGES:**

**INTRODUCTION**

1.    At all times material to this indictment:

a.    JOHN W. GOFF (hereinafter "GOFF"), was the sole owner of The Goff Group, Inc., (hereinafter "The Goff Group"). The Goff Group was engaged in the business of selling workers compensation insurance to businesses that were required under State law to maintain workers compensation insurance coverage for their employees. GOFF and The Goff Group were each licensed to engage in the business of insurance with the Alabama Department of Insurance. The Goff Group's headquarters was at 80 Technacenter Drive, Montgomery, Alabama 36117. In addition to Alabama, The Goff Group sold workers compensation insurance in several other States.

b.    Individuals referred to herein as John Doe #1 and John Doe #2, who are named as co-conspirators but not as defendants, were officers of The Goff Group who reported directly to GOFF.

c.    The Goff Group marketed and sold workers compensation insurance primarily through a network of several hundred independent insurance agents who were located

throughout Alabama and the southeastern United States.

      d.     The Goff Group entered into a Program Manager Agreement (hereinafter, the "Agreement") with Greenwich Insurance Company (hereinafter, "Greenwich") and XL Speciality Insurance Company (hereinafter, "XL Speciality") that had an effective date of January 1, 2000. GOFF signed the Agreement on behalf of The Goff Group. Greenwich and XL Speciality are wholly-owned subsidiaries of XL America Corporation. The Agreement gave The Goff Group the right to underwrite, bind, administer, and sell workers compensation insurance policies issued by XL Speciality and Greenwich and the responsibility to collect at least some premiums on behalf of XL Speciality and Greenwich.

      e.     The Alabama Insurance Code of 1975, Section 27-7-36, provides that all premiums, return premiums, or other funds belonging to others received by a producer in transactions under the producer's license shall be trust funds so received by the licensee in a fiduciary capacity, and the licensee in the applicable regular course of business shall account for and pay the same to the insurer, insured, producer, or other person entitled to such funds. The Alabama Insurance Code of 1975, Section 27-7-36, further provides that any producer who, not being lawfully entitled thereto, diverts or appropriates such funds, or any portion thereof, to his own use shall, upon conviction, be guilty of theft of property punishable as a felony under Alabama law. GOFF and The Goff Group were "producers" within the meaning of the Alabama Insurance Code.

      f.     Alabama state law and the Agreement provided that The Goff Group was a fiduciary for XL Speciality and Greenwich. As a fiduciary, The Goff Group was legally required to hold assets, such as collected premiums, in trust for XL Speciality and Greenwich and to act in XL Speciality's and Greenwich's best interests in managing their assets. The Goff Group's fiduciary

duties to XL Speciality and Greenwich also included maintaining in fiduciary bank accounts all premium monies that The Goff Group collected on behalf of XL Speciality and Greenwich, not using such premium monies for any purpose not specified in the Agreement, not converting such premium monies to the use of The Goff Group and GOFF, and being candid, honest, and forthright to XL Speciality and Greenwich.

g.    The Goff Group intended to use its network of independent insurance agents to sell workers compensation insurance policies to be issued by XL Speciality and Greenwich. The typical means by which The Goff Group would cause a workers compensation policy to be issued by XL Speciality or Greenwich is that an independent insurance agent would represent a business that needed workers compensation insurance. The independent agent would then contact The Goff Group to determine whether the business met the underwriting criteria of XL Speciality or Greenwich. If the business satisfied the underwriting criteria, then The Goff Group would provide a premium quote for the insurance policy to the independent agent. Once the business agreed to pay the quoted premium, The Goff Group would have XL Speciality or Greenwich issue the workers compensation insurance policy for the business.

h.    Prior to contracting with The Goff Group, XL Specialty and Greenwich examined the business practices and records of GOFF and The Goff Group and determined that The Goff Group owed a substantial sum of money to Reliance, Inc. (hereinafter, Reliance), another insurance company that issued workers compensation insurance policies. Prior to dealing with XL Speciality and Greenwich, The Goff Group had contracted to be the program manager for Reliance. The examination by XL Speciality and Greenwich revealed that The Goff Group owed Reliance in excess of $1,000,000 in premiums that The Goff Group had collected on behalf of Reliance as

program manager.

    i.    To help ensure that GOFF and The Goff Group did not become delinquent in remitting premiums to them like they did with Reliance, Greenwich and XL Speciality established a premium financing requirement for the payment of annual premiums for workers compensation insurance policies they would issue via The Goff Group. Under the premium financing plan, an insured business had two options for paying its annual premium, namely, the insured business could either (1) pay 100% of the annual premium up front at the time it entered into the contract for insurance, or (2) pay a down payment on the annual premium (approximately 23% of the premium amount) at the time it entered into the contract for insurance and then pay nine monthly installments for the remainder of the premium amount. If the insured business decided to pay the total premium amount up front, it would make the payment to The Goff Group, which was then required under the Agreement to remit to XL Speciality or Greenwich its share of the annual premium – approximately 75% of the premium amount. If the insured business decided to finance its annual premium, the insured business would enter into a premium financing agreement with Cananwill, Inc., (hereinafter "Cananwill"), a premium finance company which charged a fee for its services of approximately 2% of the annual premium. Under the premium finance arrangement, the insured business would pay to The Goff Group the down payment, which was approximately 23% of the annual premium and equal to The Goff Group's share of the annual premium. Then, Cananwill would remit to XL Speciality or Greenwich the remainder of the annual premium (approximately 75% of the annual premium). The insured business would then make nine installment payments to Cananwill.

    j.    The benefit of the premium finance arrangement was that it guaranteed that both The Goff Group and XL Speciality or Greenwich would receive up front their respective share

-4-

of the annual premium, and greatly reduced the risk that The Goff Group would become delinquent in remitting annual premium amounts to XL Speciality and/or Greenwich. The Goff Group's share of the annual premium was lower under the premium finance arrangement than the 100% payment option because it had to pay the approximately 2% financing fee charged by Cananwill – a cost created because of the increased risk to XL Speciality and Greenwich from dealing with GOFF and The Goff Group, which had not properly remitted premiums to Reliance.

    k.  Under the Agreement, The Goff Group, as program manager, was responsible for paying the commission to any independent insurance agent who represented a business insured by XL Speciality or Greenwich via The Goff Group. The standard commission amount for the independent insurance agent was approximately 5% of the annual premium. The Goff Group was to pay the commission to the independent insurance agent out of The Goff Group's share of the annual premium for the insured business represented by the independent agent.

    l.  A standard practice in the workers compensation insurance industry is that the insurance company that issued the workers compensation insurance policy performs an audit of the payroll of the insured business at the end of the one-year policy period. The purpose of the payroll audit is to determine whether the premium amount quoted at the beginning of the policy period and paid by the insured business accurately reflected the risk insured by the insurance company in terms of the number and types of employees of the insured business during the policy period. If the payroll audit reveals that the insured business employed more employees during the policy period than projected at the beginning of the policy period, thus increasing the risk covered by the insurance company, then the insured business owes additional premium, called the "audit premium," to the insurance company. If the payroll audit reveals that the insured business employed

fewer employees during the policy period than projected at the beginning of the policy period, thus decreasing the risk covered by the insurance company, then the insurance company owes a refund, called the "audit premium refund," to the insured business.

      m.    Under the terms, and during the course, of the Agreement, XL Speciality and Greenwich, as the insurance companies, performed the payroll audits of the insured businesses, and The Goff Group, as program manager, sent the insured businesses an invoice for any audit premium that was owed. On the audit premium invoice, The Goff Group instructed the insured business to remit by mail the audit premium to The Goff Group. Under the Agreement, The Goff Group was required to remit to XL Speciality or Greenwich the share of the audit premium owed to the respective insurance company. XL Speciality and Greenwich relied on The Goff Group, as their agent and fiduciary, to comply with Alabama state law and the Agreement and to disclose all audit premiums it received and to remit to them on a timely basis the share of the audit premium owed to them and collected by The Goff Group on their behalf.

      n.    During the first two years of the Agreement (i.e., 2000 and 2001), XL Speciality and Greenwich experienced few problems with The Goff Group. Between on or about January 1, 2002, and May 31, 2002, however, The Goff Group started to have severe cash flow problems resulting from The Goff Group losing a significant business relationship and GOFF's excessive spending of The Goff Group's funds, including expenditures for GOFF's lavish lifestyle, GOFF's exorbitant salary, the costs of real estate investments for Goff and The Goff Group, and a corporate aircraft. During this period in 2002, The Goff Group became delinquent in remitting to XL Speciality and Greenwich their share of the premiums, including audit premiums, that The Goff Group collected on the workers compensation insurance policies they had issued for the insured

businesses.  Finally, in or about June 2002, The Goff Group completely stopped remitting to XL Speciality and Greenwich any portion of the premiums, including audit premiums, that The Goff Group collected on the workers compensation insurance policies they had issued for the insured businesses.

## COUNT ONE
(Conspiracy: 18 U.S.C. § 371)

2.      The Grand Jury realleges and incorporates Paragraph 1 as though fully set forth in this Count.

## THE CONSPIRACY AND ITS OBJECTS

3.      From on or about January 1, 2002, until on or about April 30, 2003, in the Middle District of Alabama and elsewhere, defendant

## JOHN W. GOFF

knowingly and willfully did combine, conspire, confederate, and agree with John Doe #1, John Doe #2, The Goff Group, and other persons both known and unknown to the Grand Jury, (1) while acting as an agent of XL Speciality and Greenwich, to embezzle, abstract, purloin, and misappropriate money, funds, premiums, credits, and other property of XL Speciality and Greenwich, namely in excess of $1,000,000 of audit premiums belonging to XL Speciality and Greenwich, contrary to 18 U.S.C. § 1033(b)(1)(A), and (2) to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises and to cause the United States mails to be used in execution of the scheme and artifice, contrary to Title 18, United States Code, Section 1341.

4.      One of the goals of the conspiracy was for The Goff Group to obtain and retain

-7-

moneys to which it was not entitled so that those funds could be used to pay GOFF's exorbitant salary, loans and dividend payments The Goff Group made to GOFF, expenditures for GOFF's lavish lifestyle, the costs of real estate investments for GOFF and The Goff Group, costs for a corporate aircraft, and the general operating expenses of The Goff Group (collectively, the "Unauthorized Expenditures").

<u>Manner and Means of the Conspiracy</u>

5.      It was part of the conspiracy that:

a.      GOFF failed to disclose on a timely basis to XL Speciality and Greenwich The Goff Group's receipt of premiums, including audit premiums;

b.      GOFF would and did cause The Goff Group to stop remitting to XL Speciality and Greenwich their respective share of workers compensation insurance premiums, including audit premiums, collected by The Goff Group on behalf of XL Speciality and Greenwich.

c.      GOFF failed to disclose to the businesses insured by XL Speciality and Greenwich via The Goff Group and their independent agents that The Goff Group would not be remitting the premiums of the businesses, including audit premiums, to XL Speciality and Greenwich.

d.      GOFF failed to disclose to the independent agents who had represented businesses that obtained workers compensation insurance policies issued by XL Speciality and Greenwich via The Goff Group that The Goff Group was paying commissions to these agents only on a selective basis, if at all.

e.      GOFF would and did commingle premiums paid to The Goff Group on behalf of XL Speciality and Greenwich with the operating accounts of The Goff Group in violation

of the Agreement and used these premiums for unauthorized and improper purposes, including to pay the Unauthorized Expenditures.

       f.      GOFF failed to disclose to XL Speciality and Greenwich, the independent agents through which he marketed The Goff Group's program manager services for XL Speciality and Greenwich, and the businesses insured by XL Speciality and Greenwich via The Goff Group that between on or about January 1, 2002, and on or about May 31, 2002, The Goff Group started to experience severe cash flow problems resulting from The Goff Group's losing a significant business relationship, GOFF's failure to repay approximately $2,000,000 that GOFF had borrowed from The Goff Group during the period January 1, 2000, through December 31, 2001, and GOFF's excessive spending of The Goff Group's funds, including expenditures for GOFF's lavish lifestyle, GOFF's exorbitant salary, the cost of real estate investments for GOFF and The Goff Group, and a corporate aircraft.

       g.      GOFF would and did use wrongfully retained funds of XL Speciality, Greenwich, and the independent insurance agents for a variety of improper and unauthorized purposes, including to pay the Unauthorized Expenditures.

       h.      GOFF would and did make false statements to XL Speciality and Greenwich to conceal his embezzlement of the premiums, including frivolously claiming that starting on or about June 2002 he was entitled to retain all the workers compensation insurance premiums, including audit premiums, that The Goff Group collected on behalf of XL Speciality and Greenwich as a right of offset under the Agreement and falsely claiming in October 2002 that he had not collected any premiums on behalf of XL Speciality or Greenwich since June 2002.

       i.      GOFF would and did improperly and wrongfully withhold from XL

-9-

Speciality and Greenwich approximately $3,000,000 of premiums, including audit premiums, paid to The Goff Group by businesses that had obtained workers compensation insurance policies from XL Speciality and Greenwich via The Goff Group and did so withhold these premiums rightfully belonging to XL Speciality and Greenwich for unauthorized and improper purposes, including to pay the Unauthorized Expenditures.

   j.  GOFF would and did improperly and wrongfully withhold approximately $25,000 in commissions due and owing to independent agents who represented businesses that had obtained workers compensation insurance policies from XL Speciality and Greenwich via The Goff Group and did so withhold these commissions rightfully belonging to the independent agents for unauthorized and improper purposes, including to pay the Unauthorized Expenditures.

Execution of the Conspiracy

   6.  In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were caused and committed on or about the date alleged below in the Middle District of Alabama and elsewhere, by at least one of the co-conspirators herein:

   a.  causing the following matters and things to be mailed through the United States mails:

| Act | Date | Description |
|---|---|---|
| 1 | 1/22/2003 | An Annual Payroll Audit Invoice from The Goff Group to Henry County Water and Sewage Authority requesting a payment to The Goff Group in the amount $22,723 and mailed from Montgomery, AL to McDonough, GA. |
| 2 | 1/22/2003 | An Annual Payroll Audit Invoice from The Goff Group to John E. Lavender and Associates requesting a payment to The Goff Group in the amount $31,992 and mailed from Montgomery, AL to Statesboro, GA. |

-10-

| 3 | 1/22/2003 | An Annual Payroll Audit Invoice from The Goff Group to Sunshine Mills Inc., requesting a payment to The Goff Group in the amount $13,553 and mailed from Montgomery, AL to Red Bay, AL. |
| 4 | 1/22/2003 | An Annual Payroll Audit Invoice from The Goff Group to Madison County Medical Center requesting a payment to The Goff Group in the amount $17,225.92 and mailed from Montgomery, AL to Canton, MS. |

      b.     causing the following checks to be deposited into The Goff Group's bank

accounts at SunTrust Bank:

| Act | Date | Description |
|---|---|---|
| 5 | 12/20/2002 | A check in the amount of $10,168.50 from Cumberland River Hospital made payable to The Goff Group and mailed from Celina, TN to P.O. Box 241567, Montgomery, AL 36124. |
| 6 | 12/26/2002 | A check in the amount of $3,636 from Associated HealthCare Systems, Inc., made payable to The Goff Group and mailed from Brentwood, TN to P.O. Box 241567, Montgomery, AL 36124. |
| 7 | 1/31/2003 | A check in the amount of $3,636 from Associated HealthCare Systems, Inc., made payable to The Goff Group and mailed from Brentwood, TN to P.O. Box 241567, Montgomery, AL 36124. |
| 8 | 2/28/2003 | A check in the amount of $3,636 from Associated HealthCare Systems, Inc., made payable to The Goff Group and mailed from Brentwood, TN to P.O. Box 241567, Montgomery, AL 36124. |
| 9 | 12/23/2002 | A check in the amount of $4,735 from Peavy Construction Company, Inc., made payable to The Goff Group and mailed from Mobile, AL to P.O. Box 241567, Montgomery, AL 36124. |
| 10 | 12/30/2002 | A check in the amount of $11,465.57 from Thompson Engineering Company made payable to The Goff Group and mailed from Mobile, AL to P.O. Box 241567, Montgomery, AL 36124. |
| 11 | 12/30/2002 | A check in the amount of $4,986 from Bluewater Builders, Inc., made payable to The Goff Group and mailed from Emerald Isle, NC to P.O. Box 241567, Montgomery, AL 36124. |
| 12 | 1/22/2003 | A check in the amount of $4,986 from Bluewater Builders, Inc., made payable to The Goff Group and mailed from Emerald Isle, NC to P.O. Box 241567, Montgomery, AL 36124. |

| 13 | 2/27/2003 | A check in the amount of $4,986 from Bluewater Builders, Inc., made payable to The Goff Group and mailed from Emerald Isle, NC to P.O. Box 241567, Montgomery, AL 36124. |
|----|-----------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 14 | 12/31/2002 | A check in the amount of $10,404.84 from Terry Hogge Electric, Inc., made payable to The Goff Group and mailed from Talladega, AL to P.O. Box 241567, Montgomery, AL 36124. |
| 15 | 1/14/2003 | A check in the amount of $5,000 from Rowe Machinery, Inc., made payable to The Goff Group and mailed from Haleyville, AL to P.O. Box 241567, Montgomery, AL 36124. |
| 16 | 2/14/2003 | A check in the amount of $5,000 from Rowe Machinery, Inc., made payable to The Goff Group and mailed from Haleyville, AL to P.O. Box 241567, Montgomery, AL 36124. |
| 17 | 1/30/2003 | A check in the amount of $22,723 from Henry County Water and Sewage Authority made payable to The Goff Group and mailed from McDonough, GA to P.O. Box 241567, Montgomery, AL 36124. |
| 18 | 2/12/2003 | A check in the amount of $31,992 from John E. Lavender and Associates made payable to The Goff Group and mailed from Statesboro, GA to P.O. Box 241567, Montgomery, AL 36124. |
| 19 | 2/12/2003 | A check in the amount of $13,553 from Sunshine Mills Inc., made payable to The Goff Group and mailed from Red Bay, AL to P.O. Box 241567, Montgomery, AL 36124. |
| 20 | 2/24/2003 | A check in the amount of $17,225.92 from Madison County Nursing Home made payable to The Goff Group and mailed from Canton, MS to P.O. Box 241567, Montgomery, AL 36124. |
| 21 | 2/14/2003 | A check in the amount of $19,703.04 from Jones Stephens Corporation made payable to The Goff Group and mailed from Moody, AL to P.O. Box 241567, Montgomery, AL 36124. |
| 22 | 2/18/2003 | A check in the amount of $2,000 from Hiatt and Mason Enterprises, Inc., made payable to The Goff Group and mailed from Mount Airy, NC to P.O. Box 241567, Montgomery, AL 36124. |
| 23 | 3/20/2003 | A check in the amount of $2,000 from Hiatt and Mason Enterprises, Inc., made payable to The Goff Group and mailed from Mount Airy, NC to P.O. Box 241567, Montgomery, AL 36124. |

      c.      On or about October 23, 2002, GOFF traveled from Montgomery, Alabama, to New York City, New York, to meet with representatives of XL Speciality and Greenwich

(hereinafter, collectively, the "XL representatives") for the purpose of discussing GOFF's failure to remit premiums that The Goff Group had collected and was collecting on behalf of XL Speciality and Greenwich (hereinafter, the "New York Meeting").

        d.      On or about October 23, 2002, at the New York Meeting, GOFF did not inform and reveal to the XL representatives that The Goff Group was not holding in trust for XL Speciality and Greeniwch premiums that The Goff Group had collected and was collecting on behalf of XL Speciality and Greenwich as required under the Agreement, but rather GOFF was causing these premiums to be used for unauthorized and improper purposes, including to pay the Unauthorized Expenditures.

        e.      On or about October 23, 2002, at the New York Meeting, GOFF falsely stated to the XL representatives that The Goff Group did not owe premiums to XL Speciality and Greenwich because The Goff Group had ceased collecting premiums on behalf of XL Speciality and Greenwich, when in truth and fact The Goff Group had collected and was continuing to collect premiums belonging to XL Speciality and Greenwich.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
(Embezzlement of Insurance Company Funds: 18 U.S.C. §§ 1033(b)(1)(A) and 2)

7.      The Grand Jury realleges and incorporates Paragraphs 1, and 4 through 6 as though fully set forth in this Count.

8.      From on or about January 1, 2002, until on or about April 30, 2003, in the Middle District of Alabama and elsewhere, defendant

**JOHN W. GOFF**

-13-

acting as an agent of a person engaged in the business of insurance whose activities affected interstate commerce, namely XL Speciality and Greenwich, and aided and abetted by persons known and unknown to the grand jury, did knowingly and willfully embezzle, abstract, purloin, and misappropriate money, funds, premiums, credits, and other property of XL Speciality and Greenwich, namely in excess of $1,000,000 of premiums belonging to XL Speciality and Greenwich.

All in violation of 18 U.S.C. §§ 1033(b)(1)(A) and 2.

## COUNTS THREE THROUGH TWENTY-FIVE
(Mail Fraud: 18 U.S.C. §§ 1341 and 2)

### The Scheme and Artifice

9.      The Grand Jury realleges and incorporates Paragraphs 1, and 4 through 6 as though fully set forth in this Count.

10.     Between on or about January 1, 2002, and on or about April 30, 2003, in Montgomery County, Alabama, within the Middle District of Alabama, and elsewhere, the defendant

### JOHN W. GOFF,

aided and abetted by persons known and unknown to the grand jury, knowingly and willfully did devise, intend to devise, and participate in a scheme and artifice to defraud, and did obtain and cause to be obtained by means of false and fraudulent pretenses, representations, and promises the use and benefit of money, funds, and other things of value to which he was not entitled to benefit himself and others, including members of his family, The Goff Group, and other business entities that GOFF owned and controlled in whole and in part, and others, which scheme and artifice is described in paragraph 5 of this Indictment.

-14-

Manner and Means of the Scheme

11.    The manner and means of the scheme and artifice are set forth in paragraph 5 of this

Indictment.

Execution of the Scheme

12.    On or about each date listed below, in the Middle District of Alabama and elsewhere,

defendant JOHN GOFF, aided and abetted by persons known and unknown to the grand jury, for the

purpose of executing and attempting to execute the above-described scheme and artifice, placed and

caused to be placed in a post office and an authorized depository for mail, to be sent and delivered

by the United States Postal Service according to the direction thereon, and did take and receive

therefrom the following matters and things:

| Count | Date | Description |
|-------|------|-------------|
| 3 | 12/20/2002 | A check in the amount of $10,168.50 from Cumberland River Hospital made payable to The Goff Group and mailed from Celina, TN to P.O. Box 241567, Montgomery, AL 36124. |
| 4 | 12/26/2002 | A check in the amount of $3,636 from Associated HealthCare Systems, Inc., made payable to The Goff Group and mailed from Brentwood, TN to P.O. Box 241567, Montgomery, AL 36124. |
| 5 | 1/31/2003 | A check in the amount of $3,636 from Associated HealthCare Systems, Inc., made payable to The Goff Group and mailed from Brentwood, TN to P.O. Box 241567, Montgomery, AL 36124. |
| 6 | 2/28/2003 | A check in the amount of $3,636 from Associated HealthCare Systems, Inc., made payable to The Goff Group and mailed from Brentwood, TN to P.O. Box 241567, Montgomery, AL 36124. |
| 7 | 12/23/2002 | A check in the amount of $4,735 from Peavy Construction Company, Inc., made payable to The Goff Group and mailed from Mobile, AL to P.O. Box 241567, Montgomery, AL 36124. |
| 8 | 12/30/2002 | A check in the amount of $11,465.57 from Thompson Engineering Company made payable to The Goff Group and mailed from Mobile, AL to P.O. Box 241567, Montgomery, AL 36124. |

| 9 | 12/30/2002 | A check in the amount of $4,986 from Bluewater Builders, Inc., made payable to The Goff Group and mailed from Emerald Isle, NC to P.O. Box 241567, Montgomery, AL 36124. |
| 10 | 1/22/2003 | A check in the amount of $4,986 from Bluewater Builders, Inc., made payable to The Goff Group and mailed from Emerald Isle, NC to P.O. Box 241567, Montgomery, AL 36124. |
| 11 | 2/27/2003 | A check in the amount of $4,986 from Bluewater Builders, Inc., made payable to The Goff Group and mailed from Emerald Isle, NC to P.O. Box 241567, Montgomery, AL 36124. |
| 12 | 12/31/2002 | A check in the amount of $10,404.84 from Terry Hogge Electric, Inc., made payable to The Goff Group and mailed from Talladega, AL to P.O. Box 241567, Montgomery, AL 36124. |
| 13 | 1/14/2003 | A check in the amount of $5,000 from Rowe Machinery, Inc., made payable to The Goff Group and mailed from Haleyville, AL to P.O. Box 241567, Montgomery, AL 36124. |
| 14 | 2/14/2003 | A check in the amount of $5,000 from Rowe Machinery, Inc., made payable to The Goff Group and mailed from Haleyville, AL to P.O. Box 241567, Montgomery, AL 36124. |
| 15 | 1/22/2003 | An Annual Payroll Audit Invoice from The Goff Group to Henry County Water and Sewage Authority requesting a payment to The Goff Group in the amount $22,723 and mailed from Montgomery, AL to McDonough, GA. |
| 16 | 1/30/2003 | A check in the amount of $22,723 from Henry County Water and Sewage Authority made payable to The Goff Group and mailed from McDonough, GA to P.O. Box 241567, Montgomery, AL 36124. |
| 17 | 1/22/2003 | An Annual Payroll Audit Invoice from The Goff Group to John E. Lavender and Associates requesting a payment to The Goff Group in the amount $31,992 and mailed from Montgomery, AL to Statesboro, GA. |
| 18 | 2/12/2003 | A check in the amount of $31,992 from John E. Lavender and Associates made payable to The Goff Group and mailed from Statesboro, GA to P.O. Box 241567, Montgomery, AL 36124. |
| 19 | 1/22/2003 | An Annual Payroll Audit Invoice from The Goff Group to Sunshine Mills Inc., requesting a payment to The Goff Group in the amount $13,553 and mailed from Montgomery, AL to Red Bay, AL. |

| 20 | 2/12/2003 | A check in the amount of $13,553 from Sunshine Mills Inc., made payable to The Goff Group and mailed from Red Bay, AL to P.O. Box 241567, Montgomery, AL 36124. |
| 21 | 1/22/2003 | An Annual Payroll Audit Invoice from The Goff Group to Madison County Medical Center requesting a payment to The Goff Group in the amount $17,225.92 and mailed from Montgomery, AL to Canton, MS. |
| 22 | 2/24/2003 | A check in the amount of $17,225.92 from Madison County Nursing Home made payable to The Goff Group and mailed from Canton, MS to P.O. Box 241567, Montgomery, AL 36124. |
| 23 | 2/14/2003 | A check in the amount of $19,703.04 from Jones Stephens Corporation made payable to The Goff Group and mailed from Moody, AL to P.O. Box 241567, Montgomery, AL 36124. |
| 24 | 2/18/2003 | A check in the amount of $2,000 from Hiatt and Mason Enterprises, Inc., made payable to The Goff Group and mailed from Mount Airy, NC to P.O. Box 241567, Montgomery, AL 36124. |
| 25 | 3/20/2003 | A check in the amount of $2,000 from Hiatt and Mason Enterprises, Inc., made payable to The Goff Group and mailed from Mount Airy, NC to P.O. Box 241567, Montgomery, AL 36124. |

All in violation of Title 18, United States Code, Sections 1341 and 2.

### COUNT TWENTY-SIX
(False Material Statement to Insurance Regulatory Agency: 18 U.S.C. §§ 1033(a) and 2)

13.     On or about March 25, 2004, in the Middle District of Alabama and elsewhere, the defendant

### JOHN W. GOFF

aided and abetted by persons known and unknown to the grand jury, while engaged in the business of insurance whose activities affected interstate commerce, knowingly, with the intent to deceive, made a false material statement in connection with a document presented to an insurance regulatory official and agency for the purpose of influencing the actions of such official and agency, to-wit: GOFF falsely stated on an Application for Business Entity Producer License for The Goff Group to

-17-

the Alabama Department of Insurance that:

      a.      No demand had been made or judgment rendered against The Goff Group or any owner, partner, officer, or director of The Goff Group for overdue monies by an insurer, insured or producer, when in truth and fact, (i) on March 10, 2004, a final order of arbitration was issued against The Goff Group in the amount of approximately $4,000,000, in favor of XL Speciality and Greenwich, (ii) between on or about June 28, 2002, and March 25, 2004, XL Speciality and Greenwich made demands against The Goff Group for overdue monies owed to them by The Goff Group, and (iii) between on or about January 1, 2002, and March 25, 2004, the following producers made demands against The Goff Group for overdue monies owed to them by The Goff Group:

| Producer | Location | Demand Amount |
| --- | --- | --- |
| Seashore Insurance and Associates, Inc. | Jacksonville, North Carolina | $24,695.74 |
| Kemmons Wilson Insurance | Memphis, Tennessee | $10,908.84 |
| International Insurance | Mobile, Alabama | $1,271.93 |
| Lindsey McGarity | McDonough, Georgia | $1,800.00 |
| Pritchett-Moore, Inc. | Tuscaloosa, Alabama | $20,000.00 |
| Thames, Batre, Mattei, Beville, & Ison | Mobile, Alabama | $9,000.00 |
| Blount, Burke, Wimberly, & Hendricks Insurors | Statesboro, Georgia | $2,559.36 |

      b.      The Goff Group or any owner, partner, officer, or director of the Goff Group had never been a party to or ever been found liable in any lawsuit or arbitration proceeding involving allegations of fraud, misappropriation or conversion of funds, misrepresentation or breach of fiduciary duty, when in truth and fact, on March 10, 2004, a final order of arbitration was issued against The Goff Group in the amount of approximately $4,000,000, in favor of XL Speciality and

Greenwich and said arbitration involved allegations of fraud, misappropriation, conversion of funds, misrepresentation and breach of fiduciary duty by The Goff Group; and

        c.      The Goff Group or any owner, partner, officer, or director of The Goff Group never had an insurance agency contract or any other business relationship with an insurance company terminated for any alleged misconduct, when in truth and fact, on or about September 30, 2002, XL Speciality and Greenwich terminated an insurance agency contract with The Goff Group for alleged misconduct.

All in violation of Title 18, United States Code, Sections 1033(a) and 2.

## FORFEITURE ALLEGATION

Counts 1 through 26 of this indictment are hereby repeated and incorporated herein by reference.

Upon conviction of one or more of the offenses alleged in Counts 1 and 3 through 25 of this indictment, the defendant,

## JOHN W. GOFF

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violation(s), including but not limited to the following: A sum of money equal to $3,000,000 in United States currency, representing the amount of funds and proceeds obtained as a result of the offenses, as alleged in Counts 1 and 3 through 25.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

      (a)      cannot be located upon the exercise of due diligence;

-19-

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled   with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated and made applicable hereto by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

A TRUE BILL:

_____
Foreperson

_____
Louis V. Franklin, Sr.
Acting United States Attorney

_____
Stephen P. Feaga
Assistant United States Attorney

_____
J.B. Perrine
Assistant United States Attorney

_____
Tommie B. Hardwick
Assistant United States Attorney

-20-